UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEON LEE HILLARD,<br><br>Defendant. | 4:18-CR-40124-03-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Deon Lee Hillard, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 241. Plaintiff, the United States of America, opposes the motion. Docket 258. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On December 19, 2019, Hillard pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 176, 191. The court sentenced Hillard to 135 months in custody followed by 5 years of supervised release. Docket 216; Docket 219 at 2-3. The court later reduced Hillard's sentence to 67 months in custody followed by five years of supervised release. Docket 252 at 2-3.

Hillard is incarcerated at Springfield MCFP, an administrative security federal medical center, in Springfield, Missouri. Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jun. 24, 2021). The total population at MCFP Springfield is 864 persons. Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/spg/ (last visited Jun. 24, 2021).

Hillard is 33 years old. Docket 243 at 1. Hillard alleges he suffers from end stage kidney disease, chronic hypertension, hyperlipidemia, type II diabetes, hyperparathyroidism, sleep apnea, and a prior positive COVID-19 diagnosis. Docket 241 at 3.; Docket 250 at 1-2. He further asserts that his participation in various programs demonstrates that he is a good candidate for release. Docket 250 at 19-20.

On July 6, 2020, Hillard completed a Reduction in Sentence application. Docket 245 at 1. Hillard requested he be considered for compassionate release due to his medical conditions and COVID-19. *Id.* The warden denied his request on July 21, 2020. *Id.* at 2. On April 26, 2021, Hillard filed a pro se motion with the court for relief under the First Step Act. Docket 241. Hillard's counsel subsequently filed a supplement to his pro se motion. Docket 250.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). But Congress made changes to the law through the First Step Act (FSA), which permit inmates in certain circumstances to file motions with the court seeking compassionate release. *See* Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018). Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). When considering whether to grant a motion for compassionate release the court must consider the § 3553(a) sentencing factors and the applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is

warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Hillard argues that the risks posed by the COVID-19 pandemic together with his medical conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 241 at 1-2, 4; Docket 250 at 1, 3-19. Hillard requests a reduced sentence of time served and a period of home confinement as a condition of supervised release. Docket 250 at 1.

I. **Administrative Exhaustion**

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, Congress now permits courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). Hillard asserts he made a request for compassionate release to the warden and 30 days have elapsed since the request was made. Docket 245 at 1-2. Because the request was denied, the court will presume Hillard satisfied the administrative exhaustion requirement.

II. **Extraordinary and Compelling Reasons**

The Sentencing Commission was directed by Congress to describe what should be considered "extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission did so

3

by limiting "extraordinary and compelling reasons" to four categories. USSG § 1B1.13, cmt. n.1(A)-(C) (2018). The four categories pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Bureau of Prisons (BOP). USSG § 1B1.13, cmt. n.1(D).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g., United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01-KES, 2020 WL 7029873, at *3 (D.S.D. Nov. 30, 2020). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Application Notes 1(A)-(D) to guide its analysis. *See e.g., Muhs*, 2021 WL 534517, at *3.

Hillard contends that the ongoing COVID-19 pandemic in combination with his health conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 241; Docket 250. Assuming the court's discretion to consider compassionate release under the "catch-all category" is at least as broad as the policy statement of the Sentencing

4

Commission, Hillard has failed to show his reasons for release rise to the level of other "extraordinary and compelling reasons" justifying a reduction in sentence.

### A. Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n. 1(A)(ii)(I).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated May 13, 2021) (last visited Jun. 24, 2021). The CDC states individuals with the following conditions *can* be more likely to become severely ill from COVID-19: cancer, chronic kidney disease, chronic lung diseases (including moderate to severe asthma, chronic obstructive pulmonary disease (COPD), cystic fibrosis, and pulmonary hypertension), dementia or other neurological conditions, down syndrome, diabetes (type 1 or type 2), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state, liver disease, obesity, being overweight, pregnancy, sickle cell disease or thalassemia, being a current or former

smoker, having a solid organ or blood stem cell transplant, history of stroke or cerebrovascular disease, and substance abuse disorders. *Id.*

The court has reviewed the medical records submitted in this case. Hillard suffers from type two diabetes, hyperparathyroidism, hyperlipidemia, hypertension, sleep apnea, gastro-esophageal reflux disease, obesity, a prior positive COVID-19 diagnosis, and end stage renal disease. Docket 243 at 70-73. On March 30, 2021, Hillard weighed 300 pounds and was 72 inches tall. *Id.* at 57, 372. Based on his weight and height, his body mass index (BMI) is 40.7, which falls in the obese category. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_ calculator/bmi _calculator.html (last visited on Jun. 24, 2021).

Hillard's obesity condition can increase the risk of severe illness from COVID-19. Hillard informed his medical provider that he had originally weighed 400 pounds but had lost 100 pounds within the last couple of years. Docket 243 at 5, 299. When discussing his obesity condition, Hillard declined to consult with a dietitian. *Id.* at 5. Nevertheless, he was encouraged to exercise regularly to assist in his weight loss. *Id.* Hillard's hypertension and his type two diabetes are also listed as medical conditions that can increase the risk of severe illness from COVID-19. Hillard, however, is not taking any medication for his hypertension or diabetes. Docket 243 at 5, 439.[1] Hillard informed his provider that his weight loss resulted in his blood sugar being

---

[1] When listing Hillard's hypertension as a health problem, the BOP Medical records note that Hillard is "off RX" as of January 2021. Doc. 243 at 439. This leads the court to believe that Hillard is currently not taking any medication for his hypertension.

6

controlled with diet and exercise. *Id.* at 341.

Additionally, Hillard's end stage renal disease is listed as a medical condition that can increase the risk of severe illness from COVID-19. He is currently on dialysis and has been counseled on his diet and blood pressure readings. *Id.* at 5, 700-702. Hillard is also on erythropoiesis-stimulating agents (ESA) to manage his anemia and his end stage renal failure.[2] *Id.* at 72. Hillard's other medical conditions— hyperparathyroidism, hyperlipidemia, sleep apnea, gastro-reflux disease—are not among those identified by the CDC as increasing or potentially increasing the risk of severe illness from COVID-19.

Although Hillard does suffer from medical conditions recognized by the CDC, the court has required a more particularized showing of risk of serious illness from COVID-19 when evaluating compassionate release motions. Hillard's medical conditions do not prevent him from providing self-care in a correctional facility setting, and his medical conditions do not amount to extraordinary and compelling circumstances.

Additionally, the COVID-19 pandemic alone is insufficient to warrant early release. And, in fact, the current status of the COVID-19 pandemic is itself losing pervasiveness. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See BOP*

---

[2] The court presumes the acronym "ESA" signifies erythropoietin stimulating agents. *See Erythropoietin stimulating agents in the management of anemia of chronic kidney disease,* Patient Prefer Adherance, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2769266/ (last visited Jun. 24, 2021).

*COVID-19 Modified Operations Plan,* https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 16, 2021). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See Frequently Asked Questions regarding potential inmate home confinement in response to the COVID-19 pandemic,* https://www.bop.gov/coronavirus/faq.jsp (last visited Jun. 9, 2021). Since March 26, 2020 to the present, 27,282 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduces the strain on BOP resources.

Additionally, Hillard has recovered from COVID-19. On October 24, 2020, Hillard tested positive for COVID-19 after being exposed to an individual who was a confirmed positive case. Docket 243 at 445, 465. He was placed on a 17-day quarantine and his vitals were monitored. *Id.* at 397-426. He suffered from mild symptoms such as a fever, headache, and body aches. *Id.* at 397, 415, 422, 424. After recovering from COVID-19, Hillard refused a COVID-19 vaccine on December 30, 2020. *Id.* at 446. On February 25, 2021, Hillard received his first COVID-19 vaccine and on March 25, 2021, Hillard received his second vaccine and achieved full vaccination status on April 8, 2021.[3] *Id.* at 718.

---

[3] The CDC states that one is, "… not fully vaccinated until 2 weeks after the 2nd dose of a two-dose vaccine or two weeks after a one-dose vaccine." *See Key Things to Know about COVID-19 Vaccines,* Centers for Disease Control and

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this late stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See BOP: COVID-19 Update,* https://www.bop.gov/coronavirus/ (last visited Jun. 9, 2021). As of June 9, 2021, 189,410 doses had been administered systemwide. *Id.* At MCFP Springfield, 343 staff and 455 inmates have been fully inoculated as of June 9, 2021. *See Learn More About Vaccinations and View Individual Facility Stats,* https://www.bop.gov/coronavirus/ (last visited Jun. 9, 2021). According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so. *Id.* On April 15, 2021, the Director of the BOP testified to the Senate Judiciary Committee and estimated the BOP will have offered a vaccine to every inmate in its custody by the middle of May 2021. *Statement of Michael D. Carvajal Director Fed. Bureau of Prisons,* Comm. on the Judiciary, https://www.judiciary.senate.gov/download/michael-carvajal-testimony- (last visited May 4, 2021).

These efforts to limit the spread of COVID-19 and protect inmates appear to be working. As of June 9, 2021, the BOP reported only 84 federal inmates have confirmed positive test results for COVID-19 nationwide. *See BOP: COVID-19 Update,* https://www.bop.gov/coronavirus/ (last visited Jun. 9, 2021). There are currently over 129,000 federal inmates in BOP-managed

---

Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (last visited Jun. 9, 2021).

facilities. *Id.*

In light of the above, the court finds Hillard's circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B. Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). The court is not convinced that "extraordinary and compelling reasons" exists to release Hillard from custody early.

## III. Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors underscore the point that compassionate release is not warranted. Hillard's conviction stems from a conspiracy to distribute a controlled substance. At least 637.44 grams of fentanyl were attributed to the defendant. Docket 201 ¶ 31. Hillard's co-conspirators would travel to Minneapolis, Minnesota in order to obtain fentanyl from Hillard. *Id.* at ¶ 17-18. After Hillard's arrest, Hillard's brother acted on his behalf and continued to supply fentanyl to his co-conspirators in his absence. *Id.* at 18-21. After law enforcement established a controlled buy with a co-conspirator, the co-conspirator was observed leaving Hillard's residence. *Id.* ¶ 23. He was later apprehended, and fentanyl was discovered on his running path. *Id.* Thereafter, Hillard's residence was searched and law enforcement found $4,000 in U.S. currency and a firearm. *Id.* Hillard was also named in a buy that

involved $2,000 worth of fentanyl. *Id.* ¶ 24.

The presentence investigation report (PSR) calculated the total offense level as 29. *Id.* ¶ 45. Hillard had five scorable criminal history points resulting in criminal history category III. *Id.* ¶ 51. The advisory guideline range for his sentence was 108 to 135 months in custody. *Id.* ¶ 81. The court sentenced Hillard within his guideline range to 135 months in custody. Docket 219 at 2. His sentence was later reduced by half to 67 months in custody. Docket 253 at 2.

The court commends Hillard for his participation in drug education programs while in custody. The court encourages his continued progress. Nonetheless, after careful consideration, the court concludes Hillard's sentence of 67 months in custody continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

## CONCLUSION

Hillard has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for compassionate release under the First Step Act (Docket 241) is denied.

Dated July 6, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE